| Image ID: D00019301D14 | **SUMMONS** | Doc. No. 19301 |

IN THE DISTRICT COURT OF Adams COUNTY, NEBRASKA
P.O. Box 9
Hastings                NE 68902 0009


Lincoln Provision, Inc. v. Aron Puretz et al

Case ID: CI 10      632

TO:   Hastings Acquisition LLC


You have been sued by the following plaintiff(s):

   Lincoln Provision, Inc.


Plaintiff's Attorney:    David A Domina
Address:                 2425 S 144th Street
                         Omaha, NE 68144-3267

Telephone:               (402) 493-4100

A copy of the complaint/petition is attached. To defend this lawsuit, an appropriate response must be served on the parties and filed with the office of the clerk of the court within 30 days of service of the complaint/petition. If you fail to respond, the court may enter judgment for the relief demanded in the complaint/petition.

Date: AUGUST 16, 2010        BY THE COURT:   Christine D Setlik
                                                    Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE COMPLAINT/PETITION ON:

   Hastings Acquisition LLC
   % Terry G Chapman, Registered Agent
   321 South Plymouth Court Suite 1200
   Chicago, IL 60604

Method of service:   Certified Mail

You are directed to make such service within twenty days after date of issue, and show proof of service as provided by law.

Filed in Adams District Court
*** EFILED ***
Case Number: D 14 CI 10 0000632
Transaction ID: 0000127055
Filing Time: 08/16/2010 08:53:51

District Court, Adams County, Nebraska

| | |
|---|---|
| In re: Hastings Acquisition LLC, Lincoln Provision, Inc., | Case No. CI 10-___ |
| Plaintiff, | |
| v. | Complaint & Jury Demand |
| Aron Puretz. and PMP LLC, | |
| Defendants, and | |
| Hastings Acquisition LLC, | |
| Nominal Defendant. | |

Plaintiff alleges:

## Case Overview

1. Hastings Acquisition LLC was formed under Illinois law for the purpose of engaging in biddings to acquire and achieving acquisition of certain assets, and to conduct business operations pursuant to a business plan developed by Plaintiff in and with facilities located in Adams and Lancaster Counties in Nebraska. The predominant assets acquired by Hastings Acquisition are in Adams County where the company's sole headquarters and place of business is located.

2. Plaintiff owns fifty percent (50%) of Hastings Acquisition LLC. Defendants own the other fifty percent (50%). Plaintiff disassociated from Hastings Acquisition on July 2, 2010 in writing. Since then, more than thirty (30) days have passed, but neither Hastings Acquisition nor the other fifty percent (50%) owners, the Defendants, have offered a purchase price as required under applicable law for the acquisition of Plaintiff's interests in the company. Plaintiff is entitled to fair valuation of its interest in the company and payment for the interest or to acquire Defendants' interest therein, as the case may be, under governing law. Since Defendants and Hastings



Acquisition have not made a reasonable, responsible offer to purchase Plaintiff's interests as required by law, this action is necessary to determine the value of Plaintiff's interests and compel action with respect to the common ownership of the company.

3. Lincoln Provision's disassociation from Hastings Acquisition was proper and not wrongful. Disassociation occurred because:

   3.1. No operating agreement could be negotiated or agreed upon despite Plaintiff's good faith efforts.

   3.2. Defendants promised, but failed to fulfill, their obligations.

   3.3. Defendants did not conduct themselves in what Plaintiff perceived was a commercially-reasonable manner or from the perspective of lawful values and lawful circumstances.

4. Hastings Acquisition is governed by Illinois law. But the acts of the parties occurred in Nebraska. The assets are in Nebraska, as is the principal place of business, and Illinois' sole connection with Hastings Acquisition LLC, is to serve as situs for its organization. Hastings Acquisition has no principal place of business in Illinois. Its registered agent to receive service of process in Illinois is Terry Chapman, Esq., 321 S. Plymouth Court, Suite 1200, Chicago, IL 60604-3990.

## Jurisdiction, Venue, Parties

5. The District Court has subject matter jurisdiction of this action for disassociation and fair valuation under the provisions of *Neb Rev Stat* §§ 25-536 *et seq.* Defendants own real estate, conduct business, and transact commercial activity in Nebraska. They have refused to buy out the interests of Plaintiff, as required by law. This refusal was made by letter sent to the State of Nebraska from counsel for some or all of the Defendant. Accordingly, the Defendants are subject to personal jurisdiction in this Court.

6. Lincoln Provision, Inc, corporation, with its principal place of business in Cook County, Illinois, is the Plaintiff. Hastings Acquisition LLC, an Illinois limited liability company, with its principal place of business at 1009 West M St.,

AM8655

2

Hasting, Adams County, Nebraska, is one of the Defendants. This is the location of the Adams County certain real estate acquired by Hastings Acquisition.

7. Aaron Puretz, a resident of Kings County, New York, is a Defendant, and PMP LLC, a New York limited liability company, with its principal place at 43 Fenway Circle, Staten Island NY 10308 is also a Defendant. They collectively own a fifty percent (50%) interest in Hastings Acquisition. Collectively, they are referred to as "Puretz". Both Defendants may be served at the Staten Island NY address.

8. Hastings Acquisition, LLC is a defendant. Its presence is required so the Court may issue its orders to Hastings Acquisition and Puretz as necessary to achieve complete dissociation and payment of fair value to Plaintiff.

9. Plaintiff and Defendants, Puretz and PMP LLC, are the sole members of the limited liability company. Puretz and PMP LCC's interests in the company are held in common with one another. Plaintiff owns a 50% interest in Hastings Acquisition.

## Facts

10. On or about March 4, 2010, Hastings Acquisition LLC, was formed as an Illinois limited liability company. Despite efforts to negotiate an operating agreement, none was ever executed, and no agreement for an operating unit was reached. Its Articles of Organization, which constitute the sole document governing the company, are as follows:

| Form LLC-5.5 | Illinois Limited Liability Company Act Articles of Organization | FILE # 03241599 |
|---|---|---|
| Secretary of State Jesse White Department of Business Services Limited Liability Division www.cyberdriveillinois.com | Filing Fee: $500 Expedited Fee: $100 Approved By: JFL | FILED MAR 04 2010 Jesse White Secretary of State |

1. Limited Liability Company Name: HASTINGS ACQUISITION LLC

2. Address of Principal Place of Business where records of the company will be kept:
   824 WEST 38TH PLACE
   CHICAGO, IL 60609

3. Articles of Organization effective on the filing date.

4. Registered Agent's Name and Registered Office Address:
   TERRY G. CHAPMAN
   321 S PLYMOUTH CT STE 1200
   CHICAGO, IL 60604-3990                    COOK

5. Purpose for which the Limited Liability Company is organized:
   "The transaction of any or all lawful business for which Limited Liability Companies may be organized under this Act."

6. The LLC is to have perpetual existence.

7. The Limited Liability Company has management vested in the member(s).
   PURETZ, ARON
   43 FENWAY CIRCLE, STATEN ISLAND, NY 10308
   LINCOLN PROVISION, INC.
   824 WEST 38TH PLACE, CHICAGO, IL 60609

8. Name and Address of Organizer
   I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Organization are to the best of my knowledge and belief, true, correct and complete.

   Dated: MARCH 04, 2010           TERRY G. CHAPMAN
                                   321 SOUTH PLYMOUTH CT, #1200
                                   CHICAGO, IL 60604

This document was generated electronically at www.cyberdriveillinois.com

11. The sole members of Hastings Acquisition LLC, and their ownership interests, are:

    | Lincoln Provision, Inc. | 50% |
    | Aron Puretz and PMP LLC | 50% |

AM8655

4

12. No operating agreement was executed to govern the entity's affairs. Accordingly, those affairs are governed by the Articles of Organization and the law of Illinois where the company was formed.

13. After its formation, the company bid on, and became the successful bidder for, assets offered for sale and sold by a bankruptcy trustee in a proceeding in the United States Bankruptcy Court for the District of Nebraska. As a result, Hastings Acquisition LLC, acquired title the bovine slaughter and processing plant real estate, improvements and contents located in Adams County, Nebraska together with all improvements thereon and all related equipment and other items of personal property sold by the trustee :

### Legal Description of Premises

Tract 1: The North 650 feet of the Southeast Quarter of the Northwest Quarter of Section 24, Township 7 North, Range 10 West of the 6th P.M, EXCEPT the North 30 feet and the East 335 feet of the South 260 feet thereof, and EXCEPT that portion thereof previously deeded to Theo D. Haskin and Bina Lee Haskin and more particularly described in Book 145, Page 236 of the Deed Records of said County, as follows:

Beginning at the intersection of the South line of the North ½ of the Northwest Quarter of Section 24, Township 7 North, Range 10 West of the 6th P.M., and the East line of Highway #281, as said line is described in Deed to State of Nebraska recorded in Book 122, Page 533, deed records of said County; running thence East along said South line of North ½ of Northwest ¼, a distance of 1592 feet; thence Southerly on a straight line approximately 2643 feet to the North line of the South ½ of the Southwest ¼ of said Section 24; thence West along said North line of South ½ of Southwest ¼ a distance of 1542 feet to said East line of Highway #281; thence Northerly along said East line of Highway #281 a distance of 2644 feet to the point of beginning, and containing approximately 95.1 acres; also the South ½ of the Southwest ¼ of said Section 24, Township 7 North, Range 10 West of the 6th P.M., excepting the Highway #281 as deeded to State of Nebraska and

EXCEPT a tract deeded in Warranty Deed filed October 12, 2000 as Inst. No. 20004476 described as follows: The East 35.00 feet of the South 30.00 feet of the North 60.00 feet of the Southeast Quarter of the Northwest Quarter of Section 24, Township 7 North, Range 10 West of the 6th P.M., Adams County, Nebraska.

Tract 2: Lots 4 to 9, inclusive, Block 3, Veith's Park Addition to the City of Hastings, Adams County, Nebraska

Tract 3: The West Half of the Northeast Quarter of Section 24, Township 7 North, Range 10 West of the 6th P.M., Adams County, Nebraska, EXCEPT the North 733 feet thereof, and further EXCEPT the South 325 feet of the North 1058 feet of the West 265 feet thereof, subject to road on the West side thereof and

EXCEPT tracts deeded in Warranty Deed filed October 12, 2000 as Inst. No. 20004476 described as follows: The West 25.00 feet of the South 265.75 feet of the Northwest Quarter of the Northeast Quarter of Section 24, Township 7 North, Range 10 West of the 6th P.M., Adams County, Nebraska and EXCEPT

The West 25.00 feet of the North 60.00 feet of the Southwest Quarter of the Northeast Quarter of Section 24, Township 7 North, Range 10 West of the 6th P.M., Adams County, Nebraska.

14. The company also acquired title to the following described Lancaster County, Nebraska, bovine processing facility real estate and all improvements and all personal property contained within and sold by the trustee:

Parcel 1: Lot 1, Block 1, LCIDC Industrial Park, Lincoln, Lancaster County, Nebraska; and

Parcel 2: Outlot C, Ashley Heights Addition, Lincoln, Lancaster County, Nebraska.

15. The opportunity to acquire these assets and use them to organize a business involving the custom slaughter of beef animals, processing of carcasses, and sale of meat products, and the leasing or sale of the Lancaster County real estate, was solely created by Lincoln Provision. These services are of substantial value. Hastings Acquisition had no assets other than those described in the paragraphs above, and the business plan and opportunity developed by Lincoln Provision, and the contractual right to complete acquisition of them and to exploit them with the viable business plan contributed to Hastings Acquisition by Lincoln Provision, when dissociation occurred. The business plan, with Plaintiff's experience and connections, gave the venture substantial value at the time of dissociation. Defendants Puretz and PMP had no such experience; they sought to deprive Plaintiff of the business plan and its benefits.

16. Differences between the members of Hastings Acquisition developed. No operating agreement could be negotiated or agreed upon. Plaintiff became aware of fundamental differences in business approaches, philosophies, and expectations,

between Lincoln Provision and the other equity owner(s) in Hastings Acquisition. Plaintiff tried, in good faith to resolve these differences.

17. The differences between the parties became pronounced. Defendants Puretz took control of Hastings Acquisition and excluded Lincoln Provision from control. It did so by a) appointing its lawyer to appear for Hastings Acquisition as its counsel in the bankruptcy proceedings without Lincoln Provision's consent and take control of Hastings Acquisition's involvement in those proceedings, b) interfering with, and taking control of, communications with vendors and potential customers by commandeering the business plan or its implementation, c) controlling communications with vendors, including the insurance vendor, and making the decision to permit the premises to be uninsured notwithstanding requests by Lincoln Provision that it be insured, d) negotiating contracts, negotiating employment arrangements with management personnel, e) dealing with the City of Hastings and the County of Adams, to the exclusion of Lincoln Provision, and f) otherwise dominating Hastings Acquisition to the exclusion and oppression of Lincoln Provision. To Plaintiff's knowledge the physical assets of Hastings Acquisition were allowed to remain uninsured for weeks after acquisition and may remain uninsured. Orders to protect the assets against an insurable loss are requested.

18. Since there is no operating agreement governing Hastings Acquisition, Lincoln Provision did not breach, and could not have breached, any operating agreement. Lincoln Acquisition's dissociation is not wrongful under *ILCS* § 35-50(b) or any other provision of law. Upon dissociation all control by Lincoln Provision, and all rights to participate in management, ceased. Lincoln Provision has no way to protect the assets or value of Hastings Acquisition. They are within the exclusive control of Puretz as provided by Illinois law.

19. After reasonable resolution attempts, but without success, Plaintiff gave written notice of its intention to disassociate, i.e., withdraw by express will subject to payment of the value of its fifty percent (50%) distributional interest in Hastings

Acquisition LLC. Plaintiff did so on July 2, 2010 when the following written communication was sent by its lawyer to the lawyer for Hastings Acquisition LLC:

---

**DOMINALAW Group pc llo**
dominalaw.com

2425 S. 144th St.
Omaha NE 68144-3267

5000 Town Center Suite 901
Southfield, MI 48075

(402) 493-4100
(800) 245-5801

David A. Domina
Jason B. Bottlinger
Brian E. Jorde
Mark D. Raffety
Terry A. White

NE NY MI MO
NE TX
MI NE
NE
NE IA

July 2, 2010

Robert Rimberg Esq.
rlr@grlawpllc.com

Re: Lincoln Provision, Hastings Acquisition

Mr. Rimberg:

1  I write as counsel for Lincoln Provisions, Inc. You are counsel for Hastings Acquisition LLC and for the Puretz Family Interests who have asserted control over the company. Terms obviously need to be reached for the payment to Lincoln Provision of its equity in the company. LP must, and does, make clear its intention to depart from the company as a member upon payment of the value of its equity.

2  We think the equity value is considerable, but may rapidly vanish. It cannot be retained unless your client will cooperate to value, and payout to ours, promptly the equity LP is owed. We think this equity is half the value of the company less the debt, after return of capital to both investors. This sum is substantial now but may be fleeting if the company is controlled by persons with no meat business experience as appears to be the case.
As you know, Lincoln Provision cannot put in funds.

3  I am informed the buildings and other assets may be uninsured and the company may have no plan to protect its assets and equity. As the member in control, we trust your client will end this intolerable circumstance quickly.

4  Finally, LP believes it cannot become further involved in, and must dissociate from, any business dealings with the Puretz Family Interests in Hastings Acquisition LLC, or otherwise, in view of the serious differences between your client and our, and their inability to make any progress toward execution of an operating agreement.

5  Do you want to discuss, today, where our clients are?

Respectfully,

David A. Domina

Cc: Lincoln Provision, Inc.
    Terry Chapman Esq.

---

This written notice of dissociation is reconfirmed by this Complaint.

20. The substantive law of the State of Illinois includes a statute known as the *Illinois Limited Liability Company Act*. The Act is codified at 805 *ILCS* § 180/1-1

AM8655

8

et seq. This statute includes provisions concerning disassociation. The disassociation statutory provisions governing Hastings Acquisition at relevant times were, and are, as follows:

### III. Dissolution and Dissociation Under the Illinois Act

805 ILCS 180/35-45

### 180/35-45. Events causing member's dissociation

§ 35-45. Events causing member's dissociation. A member is dissociated from a limited liability company upon the occurrence of any of the following events:

(1) The company's having notice of the member's express will to withdraw upon the date of notice or on a later date specified by the member.

(2) An event agreed to in the operating agreement as causing the member's dissociation.

(3) Upon transfer of all of a member's distributional interest, other than a transfer for security purposes or a court order charging the member's distributional interest that has not been foreclosed.

(4) The member's expulsion pursuant to the operating agreement.

(5) The member's expulsion by unanimous vote of the other members if:
\*\*\*

    (C) within 90 days after the company notifies a corporate member that it will be expelled because it has filed a certificate of dissolution or the equivalent, its charter has been revoked, or its right to conduct business has been suspended by the jurisdiction of its incorporation, the member fails to obtain a revocation of the certificate of dissolution or a reinstatement of its charter or its right to conduct business;

(6) On application by the company or another member, the member's expulsion by judicial determination because the member:

    (A) engaged in wrongful conduct that adversely and materially affected the company's business;
    (B) willfully or persistently committed a material breach of the operating agreement or of a duty owed to the company or the other members under Section 15-3; or
    (C) engaged in conduct relating to the company's business that makes it not reasonably practicable to carry on the business with the member.

(7) The member's:

    (A) becoming a debtor in bankruptcy;
    (B) executing an assignment for the benefit of creditors;

- (C) seeking, consenting to, or acquiescing in the appointment of a trustee, receiver, or liquidator of the member or of all or substantially all of the member's property; or
- (D) failing, within 90 days after the appointment, to have vacated or stayed the appointment of a trustee, receiver, or liquidator of the member or of all or substantially all of the member's property obtained without the member's consent or acquiescence, or failing within 90 days after the expiration of a stay to have the appointment vacated.

\*\*\*

- (9) In the case of a member that is a trust or is acting as a member by virtue of being a trustee of a trust, distribution of the trust's entire rights to receive distributions from the company, but not merely by reason of the substitution of a successor trustee.

- (11) Termination of the existence of a member if the member is not an individual, estate, or trust other than a business trust.

### § 35-50. Member's power to dissociate; wrongful dissociation.

- (a) A member of a member-managed company has the power to dissociate from a company at any time, rightfully or wrongfully, by express will under subdivision (1) of Section 35-45. If an operating agreement does not specify in writing the time or the events upon the happening of which a member of a manager-managed company may dissociate, a member does not have the power, rightfully or wrongfully, to dissociate from the company before the dissolution and winding up of the company.
- (b) The member's dissociation from a member-managed company is wrongful only if it is in breach of an express provision of the agreement.
- (c) A member who wrongfully dissociates from a member-managed company is liable to the company and to the other members for damages caused by the dissociation. The liability is in addition to any other obligation of the member to the company or to the other members.
- (d) If a member-managed company does not dissolve and wind up its business as a result of a member's wrongful dissociation under subsection (b) of this Section, damages sustained by the company for the wrongful dissociation must be offset against distributions otherwise due the member after the dissociation.

### § 35-55. Effect of member's dissociation.

- (a) Upon a member's dissociation the company must cause the dissociated member's distributional interest to be purchased under Section 35-60.
- (b) Upon a member's dissociation from a limited liability company:
    - (1) the member's right to participate in the management and conduct of the company's business terminates, except as otherwise provided in Section 35-4, and the member ceases to be a member and is treated the same as a transferee of a member;
    - (2) the member's fiduciary duties terminate, except as provided in subdivision (3) of this subsection (b); and

(3)  the member's duty of loyalty under subdivisions (1) and (2) of subsection (b) of Section 15-3 and duty of care under subsection (c) of Section 15-3 continue only with regard to matters arising and events occurring before the member's dissociation, unless the member participates in winding up the company's business pursuant to Section 35-4.

### § 35-60. Company purchase of distributional interest.

(a) A limited liability company shall purchase a distributional interest of a member for its fair value determined as of the date of the member's dissociation if the member's dissociation does not result in a dissolution and winding up of the company's business under Section 35-1.

(b) A limited liability company must deliver a purchase offer to the dissociated member whose distributional interest is entitled to be purchased not later than 30 days after the date determined under subsection (a) of this Section. The purchase offer must be accompanied by:
  (1)  a statement of the company's assets and liabilities as of the date determined under subsection (a) of this Section;
  (2)  the latest available balance sheet and income statement, if any; and
  (3)  an explanation of how the estimated amount of the payment was calculated.

### § 35-65. Court action to determine fair value of distributional interest.

(a) In an action brought to determine the fair value of a distributional interest in a limited liability company, the court shall:
  (1)  determine the fair value of the interest, considering among other relevant evidence the going concern value of the company, any agreement among some or all of the members fixing the price or specifying a formula for determining value of distributional interests for any other purpose, the recommendations of any appraiser appointed by the court, and any legal constraints on the company's ability to purchase the interest;
  (2)  specify the terms of the purchase, including, if appropriate, terms for installment payments, subordination of the purchase obligation to the rights of the company's other creditors, security for a deferred purchase price, and a covenant not to compete or other restriction on a dissociated member; and
  (3)  require the dissociated member to deliver an assignment of the interest to the purchaser upon receipt of the purchase price or the first installment of the purchase price.

(b) After the dissociated member delivers the assignment, the dissociated member has no further claim against the company, its members, officers, or managers, if any, other than a claim to any unpaid balance of the purchase price and a claim under any agreement with the company or the remaining members that is not terminated by the court.

(c)  If the purchase is not completed in accordance with the specified terms, the company shall be dissolved upon application under item (D) of subdivision (4) of Section 35-1. If a limited liability company is so dissolved, the dissociated member has the same rights and priorities in the company's assets as if the sale had not been ordered.

(d)  If the court finds that a party to the proceeding acted arbitrarily, vexatiously, or not in good faith, it may award one or more other parties their reasonable expenses, including attorney's fees and the expenses of appraisers or other experts, incurred in the proceeding. The finding may be based on the company's failure to make an offer to pay or to comply with Section 35-60.

(e)  Interest must be paid on the amount awarded from the date determined under subsection (a) of Section 35-60 to the date of payment.

Additional aspects and provisions of Illinois law may also be applicable and, if so, they will be proven at trial.

21. After Plaintiff gave notice of dissociation from Hastings Acquisition, it awaited the offer as required by applicable law from one or more of the Defendants to acquire its distributional interest at fair value. However, no offer was made, no value was arrived upon or determined, and the sale transaction was not consummated. The thirty (30) day time period specified in *ILCS* § 35-60(b) above has expired so this matter is now ripe for judicial adjudication of the fair value due to Lincoln Provision for its ownership interests in Hastings Acquisition.

22. Lincoln Provision contends that the fair value of the assets held by Hastings Acquisition, including its going concern value, business plan and the contacts and opportunity to deploy the acquired assets as developed by Lincoln Provision for Hastings Acquisition to the date of dissociation was at least $12.5 million for the reasonable value of the real estate assets, which value was enhanced by the pro forma financial performance and value of the venture. This value was at risk due to Defendants' actions. The value of Hastings Acquisition at the time of dissociation by Plaintiff with its business plan will be proven at trial. Leave to amend this Complaint at the time of the final Pretrial Conference to specify Plaintiff's claim for damages is respectfully requested.

23. Defendants Puretz and PMP learned of the business plan, and thereafter refused to cooperate with Plaintiff to make Hastings Acquisition become viable. Instead they endeavored to oust and oppress the Plaintiffs and acted wrongfully and in violation of their fiduciary duties.

### Requests for Relief

24. Plaintiff now respectfully demands, in this proceeding, the Court:

24.1. Conduct trial, submit appropriate issues to the jury, determine the value of the enterprise and the value of Plaintiff's fifty percent (50%) interest therein.

24.2. Determine Plaintiff's interest in the enterprise is a fifty percent (50%) interest and determine the fair value of that interest.

24.3. Direct the Defendants to pay the Plaintiff the fair value of its fifty percent (50%) interest as determined by the Court with thirty (30) days after judgment is rendered.

24.4. Award to Plaintiff its taxable Court costs, prejudgment interest, and to the extent permitted by Illinois law, reasonable attorney's fees as well as other costs incurred.

25. Leave to amend this Complaint at the time of the final Pretrial Conference to specify Plaintiff's claim for damages is respectfully requested.

Jury Demand

26.  Plaintiff respectfully demands trial by jury.

August 16, 2010.

                              In re: Hastings Acquisition LLC,
                              Lincoln Provision, Inc., Plaintiff,

By: _____

                              David A. Domina, #11043
                              Mark D. Raffety, #19355
                              2425 S. 144th Street
                              Omaha, NE 68144
                              ddomina@dominalaw.com