IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE: HASTINGS ACQUISITION LLC, LINCOLN PROVISION, INC.<br><br>Plaintiff,<br><br>v.<br><br>ARON PURETZ,<br><br>Defendant,<br><br>and<br><br>HASTINGS ACQUISITION LLC,<br><br>Nominal Defendant. | No. 8:10-cv-00344 |

**BRIEF IN SUPPORT OF DEFENDANTS' STATEMENT OF
OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ON MOTION FOR
DISQUALIFICATION-NECESSARY WITNESS**

Prepared and submitted by:

Bartholomew L. McLeay
B. Garth Glissman II
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
(402) 346-600

4838-7588-3018.5

# I. INTRODUCTION[1]

Puretz objects to certain findings of fact and conclusions of law in an Order entered by the magistrate judge denying a Motion to Disqualify filed by Puretz (Filing No. 42). Puretz fully recognizes, however, the magistrate judge thoughtfully and properly made several correct findings of fact in the Order consistent with the pleadings and evidence. Indeed, Puretz takes issue with only a few factual findings and/or legal conclusions in the Order. In an effort to avoid duplication, Puretz requests the Court review its prior briefs and evidence (Filing Nos. 31, 33, 35, 40, and 41) relating to the Motion to Disqualify. *See* NECivR 72.2 (a). This brief will focus solely on those findings and conclusions made by the magistrate judge in the Order to which Puretz objects.

The magistrate judge correctly found "negotiations" of the Operating Agreement between Lincoln and Puretz are a central issue in this litigation and further that "behavior during the negotiations" will be important for the finder of fact to evaluate at trial. Despite these findings, the magistrate judge ultimately held "disqualification does not appear to be necessary at this time" with respect to Lincoln's lead negotiator and trial counsel, David Domina (Order at 5).

Puretz respectfully objects to the magistrate judge's findings of fact and/or conclusions of law. Puretz submits Domina's disqualification as trial counsel should not be deferred. Upon review of all the evidence, Puretz submits, the court will be left with the definite and firm conviction that a mistake has been committed or that legal conclusions in the Order are contrary to law. Puretz respectfully requests its objections be sustained and the Order set aside and a new order entered granting the Motion to Disqualify.

---

[1] Objections are made to an Order dated July 5, 2011 (Filing No. 42) entered by the Honorable F.A. Gossett, United States Magistrate Judge (hereinafter "magistrate judge"). Definitions include the following: "Lincoln" refers to plaintiff, Lincoln Provision, Inc.; "Puretz" refers to defendant, Aron Puretz; "Hastings" refers to Defendant Hastings Acquisition LLC; "Operating Agreement" refers to the Operating Agreement identified by Lincoln (Filing Nos. 1, 10); "Motion to Disqualify" refers to the Motion for Disqualification – Necessary Witness (Filing No. 30); "Domina" refers to David Domina.

## II. ARGUMENT

A.   STANDARD OF REVIEW

Rule 72 (a) of the Federal Rules of Civil Procedure provides the procedure for objecting to a magistrate judge's order and the applicable standard of review:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge … the magistrate judge must … when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. The district judge must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72 (a)

"A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011), *quoting Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985).

As will be shown below, even assuming there is evidence to support certain of the magistrate judge's findings of fact to which Puretz objects, upon consideration of the entirety of the evidence, Puretz submits, this court will be left with the definite and firm conviction that a mistake has been committed. Puretz further submits, with due respect, the magistrate judge's ultimate legal conclusion that Domina's disqualification "does not appear to be necessary at this time" is contrary to law under the applicable facts.

B.   **THE MAGISTRATE JUDGE CORRECTLY FOUND AND CONCLUDED THE OPERATING AGREEMENT NEGOTIATIONS WERE RELEVANT, BUT MISTAKENLY CONCLUDED ANY EVIDENCE DOMINA MAY HAVE IS AVAILABLE ELSEWHERE.**

The magistrate judge found "any evidence sought to be elicited from Domina is available elsewhere [and] [i]t is not apparent that there is relevant, disputed information that Domina

possesses, which others do not" (Order at 5). With due respect, these findings of fact by the magistrate judge are mistaken.

As an initial matter, and as stated previously, the magistrate judge correctly "conclude[d] that the operating agreement negotiations are relevant to this proceeding" and further, "because the operating agreement was not executed, it will be *necessary* for the fact-finder to consider the parties' . . . negotiations with respect to [Lincoln's] interest in Hastings" (Order at 4-5) (emphasis added). The magistrate judge further properly found and concluded "the parties' *behavior during the negotiations* is important" as well as "whether the parties exercised rights and duties consistent with the obligation of good faith and fair dealing" (Order at 5) (emphasis added).

Puretz essentially takes issue with the Order to the extent the magistrate judge found and concluded from these initial findings that evidence is available elsewhere and that Domina does not possesses relevant, disputed information that others do not have. Puretz submits, with due respect, the greater weight of the evidence shows this view is mistaken.

The Operating Agreement under negotiation was a legal contract. It was under negotiation by lawyers. Domina was the only lawyer negotiating the Operating Agreement on behalf of Lincoln. Rimberg was the only lawyer negotiating the Operating Agreement on behalf of Puretz. The negotiations were intense at times. As the magistrate judge properly noted in the Order, Puretz's lawyer, Rimberg, strongly felt "Domina's negotiation approach materially contributed to the parties' inability to reach an agreement" (Order at 5). The Operating Agreement ultimately was not agreed upon. Both Lincoln and Puretz contend the other failed to comply with the obligation of good faith and fair dealing during negotiations of the Operating Agreement.

The magistrate judge denied the Motion to Disqualify finding, "there is no indication that Domina acted as anything but a conduit in communicating his client's wishes during the negotiation process," "there is no dispute concerning the meaning or interpretation of the [Operating] [A]greement" and, "[w]ith respect to Defendants' complaints regarding deadlines and unresponsiveness, this information is largely documented in written communications exchanged between Domina and Rimberg and others" (Order at 5). The magistrate judge further found, "at this point, there is no information as to whether any relevant portions of the[] conversations [between Domina and Rimberg] are in dispute" (Order at 5). Puretz respectfully submits these findings of fact by the magistrate judge are mistaken.

Negotiations of the Operating Agreement collapsed because of overreaching by Lincoln and sharp negotiation practices, at least from Puretz's perspective. Substantial evidence supporting these contentions are found in or framed by multiple telephone conversations in which only Domina was present.

The magistrate judge correctly noted Rimberg and Domina delivered to each other emails and draft Operating Agreements, but the significant exchanges and ultimate breaking point in negotiations were crystallized in telephone conversations between the two attorneys during which, from Puretz's point of view, a lack of fair dealing and good faith were most poignantly shown. For example, on June 27, 2010, after receiving a draft Operating Agreement from Domina which Rimberg understood to be a final draft based on Domina's written communication and next-day deadline, Domina in a later telephone call ultimately admitted to Rimberg the position he had taken in his written communication was merely a matter of negotiation posturing because, in fact, he had "started at the other end" of the negotiation spectrum in terms of price and other terms (Rimberg Aff. ¶ 4).

A central pillar in this litigation involves control of Hastings in which the parties now dispute their actions during negotiations. Lincoln contends in litigation it attempted in good faith to resolve its differences with Puretz in order to move business forward for Hastings (Filing No. 1 ¶ 16 ("Plaintiff tried, in good faith, to resolve these differences."); ¶ 19 (After reasonable resolution attempts, but without success, Plaintiff gave written notice of its intention to disassociate . . ."). In contrast, Puretz contends Rimberg's negotiations with Lincoln, particularly his interaction with Domina, convinced Rimberg that Lincoln's intent all along was to wrest control from Puretz (which seemed unreasonable to Rimberg considering Lincoln, relative to Puretz, did "not have any money" invested in Hastings). (Rimberg Aff. ¶ 4). In this regard, Rimberg recounts a critical telephone conversation with Domina during negotiations in which he (Rimberg), among other things, expressed objection to the terms of the proposed Operating Agreement Domina had delivered on the ground Lincoln wrongfully sought "to be chief of everything" as it related to Hastings (Rimberg Aff. ¶ 4).

Still further, contrary to the fundamental position of prior business meetings between the parties, i.e. Lincoln representatives and Puretz, Domina communicated to Rimberg in a later telephone conversation that Lincoln had changed its view and Puretz needed to become a purely "passive investor" in Hastings, explaining to Rimberg that Lincoln had decided it could not "trust" Puretz, to which Rimberg responded in the telephone call "it goes both ways" (Rimberg Aff. ¶ 4).

During a still later telephone conversation, again, despite a contrary history between business representatives of Lincoln and Puretz, Domina stated to Rimberg that Lincoln was no longer interested in a joint arrangement in Hastings but instead wanted to *purchase* Puretz's interest, stating Lincoln was "even willing to take care of you" (or words closely to that effect)

which meant to Rimberg that Lincoln would pay for the legal expenses Puretz incurred for Rimberg's representation during negotiations (Rimberg Aff. ¶ 5).

In yet another telephone conversation with Rimberg, on or about July 7, 2010, Domina repeated Lincoln's desire to purchase Hastings, not partner with Puretz, expressly stating during the telephone conversation, "we [referring to himself and Lincoln] are confident Puretz does not know what they are doing" and adding sarcastically that Puretz "can take our money now or we will wait one year and buy it at a huge discount in bankruptcy" (Rimberg Aff. ¶ 9). In the same telephone conversation, Rimberg orally informed Domina of Puretz's willingness to buy Lincoln's distributional interest on the same terms Lincoln had proposed a few days earlier in attempting to purchase Puretz's interest, specifically stating Puretz would reimburse Lincoln for its financial investment in Hastings (Rimberg Aff. ¶ 10). Domina told Rimberg in that telephone conversation that he (Domina) would "get back" to Rimberg, but Domina never did (Rimberg Aff. ¶ 9).

No other witness can duplicate Domina's unique personal involvement in this case. Rimberg will testify for Puretz in this action on the critical telephone conversations during negotiations of the Operating Agreement and Puretz is entitled to ask and seek corroboration from Domina as a fact witness on those same telephone conversations and related matters (Glissman Aff. ¶ 1, Ex. I). If Domina is acting as trial counsel, there will be tremendous awkwardness in Domina's questioning of Rimberg on these subjects in the presence of the jury (Domina: "Is it true that I said to you during our telephone conversations during negotiations of the Operating Agreement that . . . ") as well as in Rimberg's expected answers to Domina's questions (Rimberg: "I told you, Mr. Domina, during our telephone conversation regarding the draft Operating Agreement you delivered that I . . . "). These are but a few illustrations but they

show demonstrably how the fundamental and incompatible roles of advocate and witness will be blurred if Domina is not disqualified as Lincoln's trial counsel.

Equally importantly, Puretz is entitled to present a complete story to the jury about the facts giving rise to the collapsed negotiations of the Operating Agreement. If the Order is affirmed, the court may reasonably feel obliged to place limitations on factual testimony and arguments directed toward Domina's role in the negotiation process in order to preserve decorum in the courtroom as well as properly pay homage to the separate roles of advocate and witness in a jury trial. Such a result would be highly unfair to Puretz. It is not fair to require Puretz to present a stilted and incomplete picture of its evidence to the jury through limited references to Domina, or likewise to allow Lincoln to insulate potentially harmful testimony, merely because Lincoln strategically selected Domina as both chief negotiator of the Operating Agreement and trial counsel.[2]

Whether successful or not, Lincoln's trial counsel also would be expected to attempt to challenge Rimberg's recollection of events or otherwise discredit him during trial regarding the content of his telephone conversations with Domina as well as display written communications with Domina during the critical negotiation process of the Operating Agreement. Puretz's trial counsel would be entitled to do the same. By insisting Domina serve as trial counsel, Lincoln in effect seeks to block Puretz from the same opportunity for vigorous cross-examination it will exact without limits on Rimberg who will appear as a fact witness and not legal counsel at trial.

---

[2] At one point, Rimberg contacted Domina to object to the draft Operating Agreement, explaining Puretz always believed Lincoln was to receive a 49% minority ownership interest, nineteen percent (19%) of which would be based on its management responsibilities (Glissman Supp. Aff. ¶ 11, Ex. J). Domina responded, sarcastically in Puretz view, by rhetorically asking Rimberg "[w]hat do you mean [ ] by 'the number 19% was always used?' Used for what? Nineteen percent of what?'" (Glissman Supp. Aff. ¶ 11, Ex. J). As the magistrate judge correctly noted, the "fair value" determination for Hastings will require the fact-finder to consider "'every relevant fact and circumstance,'" which includes evaluation of credibility of those negotiating the Operating Agreement, namely, Domina and Rimberg (Order at 4).

At a minimum, even assuming there was no substantial disagreement on the content of the critical telephone conversations between Rimberg and Domina, Puretz is entitled to present corroborating evidence from Domina directly, which would have a much greater impact for Puretz if delivered from the witness stand than merely through statements made by Rimberg alone.[3]

C.  **WITH DUE RESPECT, THE MAGISTRATE JUDGE ERRED IN DEFERRING THE DECISION TO DISQUALIFY DOMINA AS TRIAL COUNSEL.**

The magistrate judge made a finding of fact and/or conclusion of law that "Domina's disqualification does not appear to be necessary at this time" (Order at 5). Puretz respectfully objects and disagrees with the magistrate's finding and/or conclusion.[4]

With due respect, nothing can be gained from deferring a decision on disqualification in these circumstances. The only impact that truly can be expected is unnecessary doubling or tripling of costs and expenses as a result of the parties having to duplicate discovery based on new information, supplied late by Domina once allowed to be deposed as a fact witness during discovery, and following the appearance of new trial counsel. These additional costs and expenses can and should be avoided.

The magistrate judge properly has delayed a full planning conference and oral discovery has not yet been initiated between the parties in order for the issue of disqualification to be fully reviewed. At this point, therefore, thanks to the management of the magistrate judge, the

---

[3] Puretz further submits the magistrate judge's finding, "there is no dispute concerning the meaning or interpretation of the [Operating] [A]greement," with due respect, is not material to the Motion to Disqualify. It is undisputed the Operating Agreement was not executed or agreed upon. The *meaning* or interpretation of the words in the draft documents thus is not at issue. Moreover, there is no known contention at this point Rimberg and Domina failed to understand the *meaning* of the words in the draft Operating Agreements or disagreed as to their *interpretation*, they merely disagreed as to the *reasonableness* of the terms exchanged and the manner of the negotiations.

[4] "Although the moving party must satisfy a high standard of proof to sustain a disqualification motion, any legitimate doubts, which are created by the movant's proffer, must be resolved in favor of disqualification." *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998).

resources of the parties, as well as the limited judicial resources of this Court, have not been expended to a significant degree. The same will not be true if the Motion to Disqualify is re-filed later. Both the parties and the Court will be required to engage in a new round of briefing, evidence gathering and argument relating to the renewed motion to disqualify. Since the evidence gathered at that time would fully be expected to be nothing more than an outgrowth of the evidence already extant, a ruling to defer the decision will only result in straining precious judicial resources and imposing unnecessary costs upon the litigants in a case already expected to be very expensive.

The decision by the district court in *Stewart v. Bank of America*, N. A. 203 F.R.D. 585 (M.D. Ga. 2001) is particularly instructive. In *Stewart*, plaintiff brought an action against a defendant bank arising from "events" occurring at a foreclosure sale and the related "foreclosure transaction". *Id.* at 585. Defendant filed a motion to disqualify two of plaintiff's counsel on the ground they were "eyewitnesses to and have personal knowledge of the foreclosure transaction and events subsequent thereto that are the subject of this litigation." *Id*. Plaintiff's attorneys opposed the motion claiming "the situation fits within exceptions to the ethical rules." *Id.*

The *Stewart* court first noted "there is much debate over what happened at the foreclosure sale and thereafter [and] statements and testimony would be related to hotly contested issues." *Id.* at 587. The court also found the testimony of plaintiff's attorneys "would be based on personal knowledge from their participation" in the foreclosure sale and transaction and "disqualification of the attorneys would not work any hardship on the Plaintiff at this point [since] [n]o discovery has taken place, no dispositive motions have been filed and a trial date has not been set." *Id.* Addressing plaintiff's argument that the court should defer ruling on the motion to disqualify and

4838-7588-3018.5

9

hold it in abeyance "pending discovery," the *Stewart* court expressly rejected plaintiff's argument stating:

> [I]t is unnecessary to hold the motion to disqualify in abeyance pending discovery . . . It is obvious from the pleadings, the motions filed by the parties and the in-chambers conference … that it is in the Plaintiff's best interest that [plaintiff's current lawyers] be removed as plaintiff's attorneys and substitute counsel found immediately.

*Id*. at 587-88.[5]

Similar to *Stewart*, "there is much debate over what happened" during negotiations of the Operating Agreement and "statements and testimony would be related to hotly contested issues" and the testimony of Domina "would be based on personal knowledge from [his] participation" in the negotiations of the Operating Agreement and further that "disqualification of [Domina] would not work any hardship on [Lincoln] at this point [since] [n]o discovery has taken place, no dispositive motions have been filed and a trial date has not been set." Also, similar to *Stewart*, this Court should decline the option merely to defer ruling on the Motion to Disqualify or otherwise effectively hold it in abeyance "pending discovery." There is sufficient evidence supporting the Motion to Disqualify and Puretz respectfully requests that it be granted.

### III. CONCLUSION

For the foregoing reasons and those stated in prior briefs filed with the Court, Puretz respectfully requests the Court sustain its objections and set aside the Order and enter a new order entered granting the Motion to Disqualify.

---

[5] The *Stewart* court directly addressed and distinguished a decision by a Pennsylvania district court in *Caplan v. Braverman*, 876 F. Supp. 710 (E. D. Pa. 1995) involving alleged admissions made by attorneys in the context of settlement negotiations. The *Stewart* court held, unlike the rules and case law governing an attorney's admission in settlement negotiations that were applicable in *Caplan*, "it is readily apparent that the rules and caselaw requiring disqualification in an *advocate/witness conflict situation* are applicable" in its case. *Id.* at 587 (emphasis added). The same distinction applies here.

DATED this 15th day of July, 2011.

                    ARON PURETZ,
                    HASTINGS ACQUISITION LLC, Defendants.


                    By s/Bartholomew L. McLeay
                        Bartholomew L. McLeay #17746
                        B. Garth Glissman II #24149
                        Kutak Rock LLP
                        The Omaha Building
                        1650 Farnam Street
                        Omaha, NE  68102-2186
                        (402) 346-6000
                        bart.mcleay@kutakrock.com
                        garth.glissman@kutakrock.com


## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notice of such filing to the following:

David A. Domina
Anneliese Wright
Domina Law Group PC LLO
ddomina@dominalaw.com
awright@dominalaw.com


                    By s/Bartholomew L. McLeay
                        Bartholomew L. McLeay